No. 25-5954

# In the United States Court of Appeals for the Sixth Circuit

---

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

*v.*

BRETT HANKISON,
*Defendant-Appellant,*

---

*On Appeal from the United States District Court for the Western District of Kentucky (No. 3:22-CR-84-RGJ)*

---

## CORRECTED BRIEF FOR APPELLANT BRETT HANKISON

---

JARROD BECK

Law Office of Jarrod J. Beck, PLLC
*101 West Short Street*
*Lexington, Kentucky 40507*
*(859) 948-5535*
*jarrod.beck@gmail.com*

IBRAHIM FARAG

Farag Legal Services, PLLC
*4010 Dupont Cir. Suite 309*
*Louisville, Kentucky 40207*
*(502) 576-9979*
*ifarag@faraglegal.com*

*Counsel for Defendant-Appellant*

# TABLE OF CONTENTS

Table of Authorities ................................................................................iv

Statement Regarding Oral Argument ........................................................1

Statement of Subject Matter and Appellate Jurisdiction ...........................1

Statement of the Issues .............................................................................2

Statement of the Case ...............................................................................2

Summary of the Argument ........................................................................7

Argument ..................................................................................................9

    I.    Mr. Hankison is entitled to release pending appeal pursuant to 18 U.S.C. § 3143(b) ...............................................................................10

        A.    Mr. Hankison is not a flight or safety risk .................................11

        B.    The parties agree Mr. Hankison's appeal is not for purpose of delay and raises substantial questions of law satisfying 18 U.S.C. § 3143(b)(1)(B) ...............................................................11

    II.    Mr. Hankison's appeal raises substantial questions of law likely to result in reversal, a new trial, or a reduced sentence .........................12

        A.    The record contains insufficient evidence to support Mr. Hankison's conviction .............................................................12

        B.    Mr. Hankison's sentence is procedurally and substantively unreasonable requiring remand...................................................17

        C.    Prosecutorial misconduct requires reversal of Mr. Hankison's conviction ..................................................................................19

    III.    Exceptional reasons warrant Mr. Hankison's release pending appeal pursuant to 18 U.S.C. § 3145(c) ......................................................20

Conclusion ........................................................................................... 22

Certificate of Compliance ................................................................. 23

Certificate of Service

Designation of District Court Documents

# TABLE OF AUTHORITIES

## I. Cases

*Brendlin v. California*,
551 U.S. 249 (2007) ........................................................................13

*Hodge v. Hurley*,
426 F.3d 368 (6th Cir.2005) ..........................................................20

*Koon v. United States*,
518 U.S. 81 (1996) ..........................................................................18

*Michigan v. Chesternut*,
486 U.S. 567 (1988) ...................................................................13, 15

*Terry v. Ohio*,
392 U.S. 1 (1968) ............................................................................13

*Torres v. Madrid*,
592 U.S. 306 (2021) ...................................................................13, 14

*United States v. Acosta*,
924 F.3d 288 (6th Cir.2019) ......................................................19, 20

*United States v. Carroll*,
26 F.3d 1380 (6th Cir.1994) ......................................................19, 20

*United States v. Carter*,
236 F.3d 777 (6th Cir.2001) ...........................................................19

*United States v. Chilingirian*,
280 F.3d 704 (6th Cir.2002) ..........................................................9, 10

*United States v. Cofield*,
205 F.3d 1342 (Table) (6th Cir. February 9, 2000).........................9

*United States v. DiMattina*,
885 F.Supp.2d 672 (E.D.N.Y. August 8, 2012) .............................22

*United States v. DiSomma,*
951 F.2d 494 (2d Cir.1991) ............................................................21, 22

*United States v. Felix,*
452 F.Supp.3d 729 (6th Cir.2020)........................................................21

*United States v. Harris,*
451 F.Supp.3d 64 (D.D.C. March 27, 2020) ........................................22

*United States v. King,*
126 F.4th 440 (6th Cir.2025) ...............................................10, 12, 16, 20

*United States v. Martin,*
722 Fed.Appx. 435 (6th Cir.2018) ..................................................17, 18

*United States v. Mendenhall,*
446 U.S. 544 (1980) ..............................................................................13

*United States v. Miller,*
73 F.4th 427 (6th Cir.2023) ..................................................................17

*United States v. Mitchell,*
107 F.4th 534 (6th Cir.2024) ................................................................17

*United States v. Mutte,*
383 Fed.Appx. 718 (10th Cir.2010) ......................................................22

*United States v. Pollard,*
778 F.2d 1177 (6th Cir.1985) .........................................................10, 12

*United States v. Powell,*
761 F.2d 1227 (8th Cir.1985) (en banc) ...............................................10

*United States v. Sittenfeld,*
2024 WL 3025509 (6th Cir. May 15, 2024).............................................9

*United States v. Sutherlin,*
84 Fed.Appx. 630 (6th Cir.2003) ............................................................9

*United States v. Thomas-Mathews*,
81 F.4th 530 (6th Cir.2023) ..................................................................18

*United States v. Webb*,
403 F.3d 373 (6th Cir.2005) ................................................................17

*United States v. Warshak*,
631 F.3d 266 (6th Cir.2010) ................................................................20

*United States v. Winsor*,
890 F.Supp.2d 1257 (D.Or. September 11, 2012) ...............................22

*Walker v. Morrow*,
458 Fed.Appx. 475 (6th Cir.2012) .......................................................20

*Washington v. Hofbauer*,
228 F.3d 689 (6th Cir.2000) ................................................................20

## II.  Statutes, Rules, and Guidelines

18 U.S.C. § 3143(b)(1)(A) ....................................................................11

18 U.S.C. § 3143(b)(1)(B) ..............................................7, 8, 9, 10, 11, 12

18 U.S.C. § 3143(b)(1)(B)(iv) ..............................................................18

18 U.S.C. § 3143(b)(1) .....................................................................20, 21

18 U.S.C. § 3143(b)(2) ..........................................................................20

18 U.S.C. § 3145(c) .........................................................................20, 21

18 U.S.C. § 3553(a) ...............................................................................17

18 U.S.C. § 3553(a)(1) ...........................................................................18

28 U.S.C. § 1291 ......................................................................................1

FRAP 4(b) ................................................................................................1

USSG § 2A2.1 ............................................................................................... 17

USSG § 2A2.2(a) ......................................................................................... 17

USSG § 2A2.2(b)(2) .................................................................................... 17

USSG § 2H1.1 .............................................................................................. 17

USSG § 5K2.10 ........................................................................................ 5, 17

**STATEMENT REGARDING ORAL ARGUMENT**

Mr. Hankison respectfully waives oral argument to accelerate this Court's consideration. Following the district court's denial of his unopposed motion for release pending appeal, Mr. Hankison was required to report to the custody of the Bureau of Prisons (BOP) on October 9, 2025. As a result, the Court has expedited this appeal of the bond ruling. *See* [App. R. 4: Order].

**STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION**

On re-trial, Mr. Hankison was convicted of Count 1 and acquitted of Count 2 of the Indictment on July 30, 2025. [R. 232: Partial Jury Verdict (Ct. 2), Page ID # 10922-24]; [R. 233: Jury Verdict (Ct. 1), Page ID # 10925-26]. The district court entered a Judgment against Mr. Hankison on July 30, 2025. [R. 292: Judgment, Page ID # 14527-14534]. Mr. Hankison filed an unopposed motion for release pending appeal on August 28, 2025. [R. 296: Motion for Release Pending Appeal, Page ID # 14544-59]; [R. 297: Government Response, Page ID # 14561-64]. The court denied Mr. Hankison's motion on October 6, 2025. [R. 299: Order, Page ID # 14622-60]. This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291 and FRAP 9(b).

## STATEMENT OF THE ISSUES

I.    Is Mr. Hankison entitled to release pending appeal pursuant to 18 U.S.C. § 3143(b)?

II.   Does Mr. Hankison's appeal raise substantial questions of law or fact likely to result in reversal, a new trial, or a reduced sentence?

III.  Do exceptional circumstances warrant Mr. Hankison's release pending appeal pursuant to 18 U.S.C. § 3145(c)?

## STATEMENT OF THE CASE

Mr. Hankison was one of several Louisville Metro Police Department (LMPD) officers involved in the attempted search of Breonna Taylor's apartment in Louisville, Kentucky at approximately 12:45 a.m. on March 13, 2020.  [R. 169-1: Trial Stipulations, Page ID # 5844].  Officers knocked on the door multiple times.  *Id*. at Page ID # 5845.  Receiving no response, LMPD used a "ram to hit the right side of the door, near the handle[.]"  *Id*.  "When the…door swung open," Ms. Taylor and her boyfriend were in the hallway.  Ms. Taylor's boyfriend "fired one shot with a handgun," striking LMPD Sergeant John Mattingly in the femoral artery.  As the shooter sought cover, Mattingly returned fire.  "Two" of Mattingly's six "shots hit Ms. Taylor[,]" who had been standing behind her boyfriend.  *Id*.

LMPD Detective Myles Cosgrove stepped into the doorway in front of Mattingly and fired 16 times.  *Id*.  One of Cosgrove's "bullets caused Ms. Taylor's death."  *Id*.  Following the initial shot by Ms. Taylor's boyfriend, Mr. Hankison "moved from the common entryway to the parking lot side of" Ms. Taylor's

2

apartment and "fired five rounds through the sliding glass door[.]" *Id*. at Page ID # 5846. Mr. Hankison then fired five rounds through a bedroom window toward the hallway. *Id*. Mr. Hankison's "bullets did not strike anyone." *Id*.

This tragic incident led to intense public scrutiny and the proliferation of misinformation about the circumstances surrounding Ms. Taylor's death.[1] In the months that followed, Mr. Hankison alone was charged in Kentucky state court. He was acquitted at trial on March 3, 2022. Five months later, a federal indictment was returned alleging that Mr. Hankison deprived Ms. Taylor of her Fourth Amendment right "to be free from unreasonable seizures" when he fired shots through the bedroom window. [R. 1: Indictment, Page ID # 2]. The Indictment also charged Mr. Hankison with depriving Ms. Taylor's neighbors of their rights when he fired shots through the sliding glass door. *Id*. at Page 3.

Following a two-week trial and nearly three days of deliberations, the district court declared a mistrial on November 16, 2023 after the jury could not reach a unanimous verdict on either count. [R. 134: Order, Page ID # 5427-28]. The government sought a re-trial, which started on October 15, 2024.

---

[1] *Compare* Amina Elahi, "Sleeping While Black: Louisville Police Kill Unarmed Black Woman," National Public Radio, May 13, 2020, (available at: https://www.npr.org/2020/05/13/855705278/sleeping-while-black-louisville-police-kill-unarmed-black-woman) *with* Doug Stanglin, Tessa Duvall, and Andrew Wolfson, "Fact Check: Viral Meme Listing Breonna Taylor 'Truths' Includes Misinformation," USA Today, September 26, 2020, (available at: https://www.usatoday.com/story/news/factcheck/2020/09/26/fact-check-posts-breonna-taylor-truths-include-misinformation/3531905001/).

Deliberations began on October 30.  [R. 251: Memorandum and Order, Page ID # 13571].  The following day, the jury sent a note asking whether they "needed to know" if Ms. Taylor was a "living victim" at the time Mr. Hankison fired the rounds into the bedroom window.  [R. 242: Trial Transcript, Volume 12, Page ID # 11807].

The jury continued deliberations for two more days before reporting they were deadlocked and unable to reach a verdict on either count.  [R. 251: Memorandum and Order, Page ID # 13571-72].  The district court provided an *Allen* charge, and deliberations continued.  *Id*.  At 5:52 PM on November 1, 2024, the jury reported still being unable to reach a verdict as to one of the two counts.  *Id*.  At 6:43 PM, a partial verdict was returned acquitting Mr. Hankison of Count 2.  *Id*.  The court then read a second *Allen* charge to the jury as to the remaining count.  Forced to proceed, the jury returned a guilty verdict on the count related to Ms. Taylor at 9:20 PM.  *Id*.  at Page ID # 13572.

The government advocated for a sentence of time served, noting it was "unaware of another prosecution in which a police officer has been charged with depriving the rights of another person under the Fourth Amendment for returning fire and not injuring anyone."  [R. 285: Government Sentencing Memorandum, Page ID # 14245].  Indeed, the government insisted that "reasonable minds might disagree as to whether" Mr. Hankison's "conduct constituted a seizure under the

Fourth Amendment in the first place." *Id*. at Page ID # 14259.  The government also emphasized that Mr. Hankison's conduct "occurred under sudden and extreme provocation" that "negates malice." *Id*. at Page ID # 14249.

At sentencing, both parties argued Mr. Hankison should receive consideration for a departure under USSG § 5K2.10 because a third party's wrongful conduct contributed significantly to provoking the offense.  [R. 290: Transcript, Sentencing, Page ID # 14387-94].  The district court found that provision "inapplicable" because Mr. Taylor's boyfriend was the initial aggressor, not Ms. Taylor.[2]  *Id*. at Page ID # 14394-95.  The court also said it would not consider other arguments for a lower sentence based on the fact that Mr. Hankison's conduct was provoked.  *Id*. at Page ID # 14395-96.  "We have [already] taken it into account in choosing to apply the aggravated assault guideline as opposed to the attempted murder guideline." *Id*. at Page ID # 14396.

The government emphasized that "no one disagrees that the threat to the officers that night was real and no one disagrees that it was a reasonable perception of Mr. Hankison that there was a lethal threat to his fellow officers." *Id*. at Page ID # 14463.  The government noted that multiple jurors "struggled with" the distinctions leading to Mr. Hankison's conviction.  *Id*. at Page ID # 14464.  The

---

[2] Mr. Taylor's boyfriend was initially named as a victim in Count 1 of the Indictment.  [R. 1: Indictment, Page ID # 2].

5

government also argued it was unclear the evidence established Mr. Hankison fired into the apartment with the intent to kill.  *Id*. at Page ID # 14469-70.

The district court imposed a 33-month sentence.  *Id*. at Page ID # 14499. The court reiterated that Mr. Hankison was "not likely to flee or pose a danger" to the community and permitted him to remain on bond.  *Id*. at Page ID # 14502-03. The government had "no objection" to Mr. Hankison remaining on release pending appeal, but the court instructed the defense to file a written motion.  *Id*. at Page ID # 14503-04.

Counsel for Mr. Hankison filed an unopposed motion for release pending appeal on August 28, 2025.  [R. 296: Motion for Release Pending Appeal, Page ID # 14544].  The government responded by reiterating that Mr. Hankison's release was appropriate because his appeal raises "close" and "substantial" questions of "law or fact[.]"  [R. 297: Government Response, Page ID # 14562].

The district court denied Mr. Hakinson's motion on October 6, 2025, three days before his scheduled report date.  [R. 299: Order, Page ID # 14622-14660]. The court again found Mr. Hankison presents no risk of flight or danger to the community.  *Id*. at Page ID # 14626.  But the court dismissed all issues raised by Mr. Hankison as insufficient to permit release.  *Id*. at Page ID # 14627.  The court also denied Mr. Hankison's request for an extension of time to appeal to this Court

before he began service of his sentence. *Id*. at Page ID # 14659-60. Mr. Hankison has been in BOP custody since October 9.

## SUMMARY OF THE ARGUMENT

This is the kind of case that demonstrates why 18 U.S.C. § 3143(b) exists. The parties and the district court agree Mr. Hankison is not a flight risk and would present no danger to others or to the community if released pending appeal. Beyond that, the parties agree Mr. Hankison's release is appropriate because the issues involved in his appeal are "substantial questions of law or fact" that "could go either way" and would likely result in reversal, a new trial, or a reduced sentence as required under 18 U.S.C. § 3143(b)(1)(B).

The only issue here is the district court's erroneous application of the bail statute. The record confirms the significance of the issues raised by Mr. Hankison, and the government agrees. Contrary to the court's analysis, the question at this stage is not whether reversal of Mr. Hankison's conviction is probable or likely. It is only whether he would be entitled to reversal, a new trial, or a reduced sentence if he succeeds on appeal. The timeline and lengthy procedural history in this case confirm Mr. Hankison has met that standard. As the government noted in its response to his motion for release, Mr. Hankison:

> was acquitted in his state court trial; the jury in his first federal trial in this case was unable to reach a verdict as to either count of the indictment; and, in his third and final trial (the second federal trial), the jury found the case

7

sufficiently vexing that two *Allen* charges were needed before they could reach a unanimous verdict on both counts, one of which was not guilty.

[R. 297: Government Response, Page ID # 14562].

In that second federal trial, the government presented insufficient evidence to establish Ms. Taylor was alive or otherwise capable of being seized at the time Mr. Hankison allegedly violated her rights by firing his duty weapon. Without that evidence, the government could not establish Ms. Taylor was subject to an "unreasonable seizure[]" as alleged in the Indictment. [R. 1: Indictment, Page ID # 2]. Likewise, there has never been any dispute that Mr. Hankison perceived a deadly threat to himself and others before firing. As a result, the evidence failed to establish that: (1) the force he used was unreasonable; or (2) that he acted willfully for the purpose of depriving the victim of her constitutional rights.

Those issues are sufficient to satisfy 18 U.S.C. § 3143(b)(1)(B)'s requirements. But the district court also erred by refusing to consider the parties' arguments that Mr. Hankison should receive a lesser sentence because his conduct was a justified response to provocation—the use of deadly force against a fellow officer. Remand will be necessary to correct this error.

Finally, prosecutorial misconduct during the course of this case was sufficiently egregious to warrant reversal. Throughout trial, the government improperly vouched for its law enforcement witnesses and misstated the law and the evidence. The misconduct was deliberate and extensive, misleading the jury

and unfairly prejudicing Mr. Hankison in a case where there was insufficient proof to convict.

Whether Mr. Hankison's conviction must be reversed is a question for another day. But it is clear his appeal involves "substantial questions of law or fact" that would warrant reversal, a new trial, or a reduced sentence if he prevails. 18 U.S.C. § 3143(b)(1)(B). Mr. Hankison has satisfied the bail statute's requirements. He respectfully asks this Court to grant his request for release pending resolution of his appeal.

## ARGUMENT

When considering a district court's denial of a motion for bond pending appeal, this Court applies "de novo review to the district court's interpretation of the bail statute and review[s] the district court's underlying factual determinations for clear error." *United States v. Sutherlin*, 84 Fed.Appx. 630, 632 (6th Cir.2003) (citing *United States v. Chilingirian*, 280 F.3d 704, 709 (6th Cir.2002)). *See also United States v. Sittenfeld*, 2024 WL 3025509 at *1 (6th Cir. May 15, 2024) (district court's "evaluation of the legal merits" of a motion for bond pending appeal reviewed "de novo"); *United States v. Cofield*, 205 F.3d 1342 at *1 (Table) (6th Cir. February 9, 2000) (district court's ruling on "issues of law" reviewed "de novo").

## I.    Mr. Hankison is entitled to release pending appeal pursuant to 18 U.S.C. § 3143(b).

A person found guilty of an offense and sentenced to a term of imprisonment is entitled to release pending appeal if he establishes: (1) by clear and convincing evidence that he is unlikely to flee or pose a danger to others; and (2) that his appeal is not for purposes of delay and raises a substantial question of law or fact likely to result in reversal, an order for a new trial, a sentence that does not result in imprisonment, or a lesser sentence sufficient to result in release before conclusion of the appeal.  18 U.S.C. § 3143(b); *United States v. King*, 126 F.4th 440, 442 (6th Cir.2025) (citing *Chilingirian*, 280 F.3d at 709).

"An appeal raises a substantial question when [it] presents a 'close question or one that could go either way' and…the question 'is so integral to the merits of the conviction that it is more probable than not that reversal or a new trial will occur if the question is decided in the defendant's favor.'"  *King*, 126 F.4th at 442 (citing *United States v. Pollard*, 778 F.2d 1177, 1182 (6th Cir.1985) (quoting *United States v. Powell*, 761 F.2d 1227, 1233-34 (8th Cir.1985) (en banc)).

Release under 18 U.S.C. § 3143(b) "does not require a court to think reversal is probable or likely."  *Pollard*, 778 F.2d at 1181-82.  Instead, it is only necessary that "success on appeal, on the substantial question[s] that the defendant raises, would result in reversal or a new trial."  *Id*. at 1182 (citing 18 U.S.C. § 3143(b)(1)(B)).

### A.    Mr. Hankison is not a flight or safety risk.

There is no dispute Mr. Hankison satisfies the bail statute's first two requirements.  The government and the district court agree Mr. Hankison "is unlikely to flee or pose a danger to others[.]"  18 U.S.C. 3143(b)(1)(A).  *See* [R. 297: Government Response, Page ID # 14561-62]; [R. 299: Order, Page ID # 14626].

### B.    The parties agree Mr. Hankison's appeal is not for purpose of delay and raises substantial questions of law satisfying 18 U.S.C. § 3143(b)(1)(B).

The government also agrees Mr. Hankison's appeal is not for purposes of delay.[3]  As the government noted in its response to his release motion, Mr. Hankison "pressed his defense with vigor.  Nothing about his contemplated claims of error appear frivolous or otherwise raised solely for the purpose of delay."  [R. 297: Government Response, Page ID # 14562].

More significant, the government acknowledges that Mr. Hankison has "preserved multiple good faith claims of error regarding [his] trial and sentencing." *Id*.  The government goes further, confirming that Mr. Hankison's "contemplated appeal raises close issues that could go either way…and it therefore raises a substantial question of law or fact likely to result in reversal, a new trial, or a

---

[3] The district court made no explicit finding about this factor in its order denying Mr. Hankison's release request.  *See* [R. 299: Order, Page ID # 14622-60].

reduced sentence" as required under 18 U.S.C. § 3143(b)(1)(B). *Id.* (internal

quotation marks omitted). "That is all defendant need show to warrant bail

pending appeal." *Id.* (citing *Pollard*, 778 F.2d at 1181-82).

## II. Mr. Hankison's appeal raises substantial questions of law or fact likely to result in reversal, a new trial, or a reduced sentence.

Contrary to the district court's findings, the issues arising from the unique

facts and circumstances of Mr. Hankison's case involve substantial questions of

"law or fact" that are "integral to the merits of [his] conviction[.]" *King*, 126 F.4th

at 442. Again, Mr. Hankison's release at this stage does not require a finding that

"reversal is probable or likely[,]" just that significant questions exist that would

warrant reversal, a new trial, or a reduced sentence if his appeal is successful.

*Pollard*, 778 F.2d at 1181-82.

### A. The record contains insufficient evidence to support Mr. Hankison's conviction.

Count 1 of the Indictment required the government to prove beyond a

reasonable doubt that Mr. Hankison: (1) willfully deprived Ms. Taylor of her

constitutional right to be free from "unreasonable seizures"; and (2) did so when he

"fired five shots" through the "bedroom window" of her apartment. [R. 1:

Indictment, Page ID # 2]. As the Supreme Court has held, "police can be said to

have seized an individual only if, in view of all of the circumstances surrounding

the incident, a reasonable person would have believed that he was not free to

leave." *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988) (citing *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)) (internal quotation marks omitted).  Such a "seizure" can take the form of "physical force" or a "show of authority" that "in some way restrain[s] the liberty" of the target. *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968).  The Court recently underscored the common law definition of a "seizure," describing it as the "application of physical force to the body of a person with intent to restrain[.]" *Torres v. Madrid*, 592 U.S. 306, 311 (2021).  Courts consider "what a person was doing before the show of authority" to determine if an individual has submitted in a way that constitutes a seizure. *Brendlin v California*, 551 U.S. 249, 262 (2007).

Attempting to apply these principles to the facts of this case shows why it is so unique.  Mr. Hankison's shots did not hit anyone, thus he could not have seized Ms. Taylor through application of physical force as discussed in *Torres*.  This is why the government was required to prove that Ms. Taylor was alive and otherwise capable of being seized when Mr. Hankison's shots occurred.  If not, no "reasonable person" in Ms. Taylor's position would have the capacity to believe he or she "was not free to leave." *Chesternut*, 486 U.S. at 573.  It would be similarly impossible to prove Ms. Taylor had her "freedom of movement" limited by Mr. Hankison without first establishing that she actually "enjoy[ed] some freedom of

movement at the time [he] fired his shots." [R. 217: Trial Transcript, Volume 8-A, Page ID # 12632].

At the close of the government's case, the defense moved for a judgment of acquittal in part because the government failed to present sufficient evidence Ms. Taylor was alive and capable of being seized when "Mr. Hankison fired his weapon." *Id*. at Page ID # 12627-28. The government's only response was that it was "common sense" she was still alive because witnesses heard Ms. Taylor's boyfriend encouraging her to breathe after the shooting stopped.[4] *Id*. at Page ID # 12638. Even the district court said it was unsure "a reasonable jury could make a finding one way or the other" on that point. [R. 240: Trial Transcript, Volume 10, Page ID # 11654].

However, the district court suggested it did not matter if Ms. Taylor had freedom of movement when Mr. Hankison fired because to hold otherwise would mean a "quadriplegic laying in their bed" could never have their rights violated. [R. 218: Trial Transcript, Volume 8-B, Page ID # 12650]. The court's response misses the point. A quadriplegic clearly could have his or her rights violated through the "application of physical force to the body…with intent to restrain[.]" *Torres at* 311. But if someone is incapable of perceiving what is happening, a

---

[4] Ms. Taylor's boyfriend told the 911 operator Ms. Taylor was unresponsive during a call following the shooting.

"reasonable person" in those circumstances would also necessarily be incapable of believing "he was not free to leave." *Chesternut*, 486 U.S. at 573. The government presented no evidence on this point, an omission that should have been dispositive.

The defense also argued for acquittal because the government presented insufficient evidence to show Mr. Hankison acted willfully as required under 18 U.S.C. § 242. [R. 217: Trial Transcript, Volume 8-A, Page ID # 12634]. This argument is two-fold. At trial, the government insisted Sergeant Mattingly and Detective Cosgrove "were justified" in firing because they perceived a threat and sought to neutralize it. *See* [R. 241: Trial Transcript, Volume 11, Page ID # 12841]. The government also agreed Mr. Hankison "reasonably perceived" the same threat as Mattingly and Cosgrove, "no question." *Id*. at Page ID # 12837.

Because Mr. Hankison perceived the same threat and responded in the same manner, it would be internally inconsistent to conclude the force he applied was "unreasonable" as required under Count 1. [R. 1: Indictment, Page ID # 2]. *See also* [R. 290: Transcript, Sentencing, Page ID # 14463] (Government: [N]o one disagrees that the threat to the officers that night was real and no one disagrees that it was a reasonable perception of Mr. Hankison that there was a lethal threat to his fellow officers."). This leads to another critical point— Mr. Hankison could not

have "willfully" deprived Ms. Taylor of her rights if the force he applied was not "unreasonable."

As the government noted, Mr. Hankison had a "legal justification defense, either self-defense or defense of others[.]" [R. 290: Transcript, Sentencing, Page ID # 14662]. Such a defense negates willfulness and explains why the government could find "no case" other than this one "where an officer has been charged for returning fire" without injuring anyone. *Id*. at Page ID # 14661. This reality further distinguishes this case and strongly suggests the evidence was insufficient to establish Mr. Hankison acted willfully as required to sustain his conviction.

These issues present novel and substantial questions of law and fact. The district court's legal conclusion that they are not "close" enough to justify release under 18 U.S.C. § 3143(b) is undermined by the record. Even when attempting to dismiss Mr. Hankison's sufficiency arguments in its order denying his bond motion, the court had to point to testimony presented on rebuttal long after it had erroneously denied his Rule 29 motion on similar grounds. *See* [R. 299: Order, Page ID # 14652] (citing [R. 240: Trial Transcript, Volume 10, Page ID # 14652]). There is little doubt these matters represent "close question[s]" that could "go either way" and that are "so integral to the merits of the conviction that it is more probable than not that reversal or a new trial will occur if the question is decided in the defendant's favor.'" *King*, 126 F.4th at 442.

16

**B.    Mr. Hankison's sentence is procedurally and substantively unreasonable requiring remand.**

A sentence is procedurally unreasonable if a court fails to consider the sentencing factors as required under 18 U.S.C. § 3553(a).  *United States v. Mitchell*, 107 F.4th 534, 540 (6th Cir.2024) (citing *United States v. Miller*, 73 F.4th 427, 429-30 (6th Cir.2023)).  A sentence is substantively unreasonable when a court "fails to consider pertinent 18 U.S.C. § 3553(a) factors…or gives an unreasonable amount of weight to any pertinent factor."  *United States v. Martin*, 722 Fed.Appx. 435, 437 (6th Cir.2018) (citing *United States v. Webb*, 403 F.3d 373, 385 (6th Cir.2005)).

Here, the district court agreed with the parties that Mr. Hankison's sentencing range should be calculated pursuant to USSG § 2H1.1 based on the aggravated assault guideline at USSG §§ 2A2.2(a) and (b)(2) rather than the attempted murder guideline at USSG § 2A2.1.  *See* [R. 290: Transcript, Sentencing, Page ID # 14381-82].  But when the parties argued Mr. Hankison should receive a departure under USSG § 5K2.10 or a variance because a third party provoked his conduct, the court said it would not consider provocation again because it was "taken into account in choosing to apply the aggravated assault guideline as opposed to the attempted murder guideline."  *Id*. at Page ID # 14396. *See also id*. at Page ID # 14485-87.

The district court's rulings in this regard were erroneous. 18 U.S.C. § 3553(a)(1) indicates sentencing courts "shall consider" the nature and circumstances of the offense in determining an appropriate sentence. The fact that the aggravated assault guideline was used to determine Mr. Hankison's sentencing range did not permit the court to ignore this explicit statutory directive. *See also Koon v. United States*, 518 U.S. 81, 82 (1996) (courts authorized to depart even if relevant factor "is already taken into account"). In doing so, the court also "failed to consider" the listed statutory sentencing factors and gave "an unreasonable amount of weight" to a "pertinent factor." *Martin*, 722 Fed.Appx. at 437.

The district court failed on all three fronts by refusing to consider this highly mitigating aspect of Mr. Hankison's offense conduct when determining the sentence and whether to grant a downward departure or variance. This error renders Mr. Hankison's sentence both procedurally and substantively unreasonable, requiring remand. *See, e.g., United States v. Thomas-Mathews*, 81 F.4th 530 (6th Cir.2023) (remand necessary where district court "failed to sufficiently address the relevant statutory sentencing factors" and defendant's downward variance argument "based on statutory sentencing factors"). These circumstances warrant Mr. Hankison's release under 18 U.S.C. § 3143(b)(1)(B)(iv) because correction of the issue is likely to result in a "reduced sentence to a term of

imprisonment less than the total of the time already served plus the expected duration of the appeal process."

### C. Prosecutorial misconduct requires reversal of Mr. Hankison's conviction.

"Prosecutorial misconduct may be so exceptionally flagrant that it constitutes plain error and is grounds for reversal even if the defendant did not object to it." *United States v. Carter*, 236 F.3d 777, 783 (6th Cir.2001). In determining whether a "prosecutor's alleged misconduct" meets that standard, this Court considers four factors:

> (1) the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the competent proofs introduced to establish the guilt of the accused.

*United States v. Acosta*, 924 F.3d 288, 300 (6th Cir.2019) (citing *United States v. Carroll*, 26 F.3d 1380, 1384 (6th Cir.1994)).

Mr. Hankison filed a lengthy motion for a new trial detailing consistent, deliberate misconduct by the prosecutor in this case. *See* [R. 254: Motion for New Trial, Page ID # 13587-13611]. The prosecutor ignored the district court's instructions for counsel to avoid commenting on the propriety of conduct by officers involved in the incident. *Id*. at Page ID # 13593-95. The prosecutor improperly vouched for and bolstered various law enforcement witnesses. *Id*. at Page ID # 13595-97; *id*. at Page ID # 13605-09. The prosecutor also

misrepresented important facts, attacked Mr. Hankison's credibility based on evidence not in the record, and impermissibly appealed to the jury to act as the conscience of the community. *Id*. at Page ID # 13597-13605.

Mr. Hankison hereby incorporates by reference all arguments presented in his motion for a new trial. *Id*. While the district court denied his motion, the prosecutor's improper comments were deliberate and pervasive, occurring during nearly every stage of the proceeding. Given the "unique facts" of this case and the reality that the evidence of Mr. Hankison's guilt was nowhere close to overwhelming, the prosecutorial misconduct that occurred here requires remand. *Acosta*, 924 F.3d at 306. *See also Walker v. Morrow*, 458 Fed.Appx. 475, 489-90 (6th Cir.2012); *United States v. Warshak*, 631 F.3d 266, 307 (6th Cir.2010); *Hodge v. Hurley*, 426 F.3d 368, 378-79 (6th Cir.2005); *Washington v. Hofbauer*, 228 F.3d 689, 700 (6th Cir.2000); *Carroll*, 26 F.3d at 1387. This is another "close" issue that would warrant reversal or a new trial if Mr. Hankison is successful on appeal. *King*, 126 F.4th at 442.

### III.    Exceptional circumstances warrant Mr. Hankison's release pending appeal pursuant to 18 U.S.C. § 3145(c).

18 U.S.C. § 3145(c) indicates that a person subject to detention under 18 U.S.C. § 3143(b)(2) "who meets the conditions of release set forth in" 18 U.S.C. § 3143(b)(1) "may be ordered released, under appropriate conditions, if it is clearly

shown that there are exceptional reasons why [his] detention" is not "appropriate." 18 U.S.C. § 3145(c).

"Exceptional reasons" are those that "present a unique combination of circumstances giving rise to situations that are out of the ordinary." *United States v. Felix*, 452 F.Supp.3d 729, 732 (6th Cir.2020) (citing *United States v. DiSomma*, 951 F.2d 494, 497 (2d Cir.1991)).  There is no requirement that the questions raised in a defendant's appeal be "of absolute legal novelty" to constitute "exceptional reasons." *DiSomma*, 951 F.2d at 497.  "An unusual legal or factual question can be sufficient…to meet this test." *Id*.  "On the other hand, a merely substantial question may be sufficient, in the presence of one or more remarkable and uncommon factors[.]" *Id*.

Mr. Hankison's appeal presents truly novel legal questions.  As the government has noted, Mr. Hankison's case is entirely unique in that he is the only law enforcement officer to be prosecuted under 18 U.S.C. § 242 for "returning fire and not injuring anyone."  [R. 285: Government Sentencing Memorandum, Page ID # 14245].  Mr. Hankison's preserved legal arguments about the sufficiency of the evidence that Ms. Taylor was alive and the necessity for proof that she was capable of being and was seized when he fired his weapon are questions of first impression before this Court.

21

Mr. Hankison is also a former law enforcement officer who was involved in one of the most highly publicized civil rights stories in recent memory. Now in BOP custody, his notoriety has led to threats that have required him to be moved to special housing. These circumstances constitute a "remarkable or uncommon factor" further supporting Mr. Hankison's release pending appeal. *DiSomma*, 951 F.2d at 497 (exceptional reasons existed where defendant mounted a "direct and substantial challenge on appeal to the factual underpinnings" of one element "upon which his sole conviction stands or falls"). *See also United States v. DiMattina*, 885 F.Supp.2d 672 (E.D.N.Y. August 8, 2012) (exceptional reasons existed for defendant convicted of extortion and firearms offenses); *United States v. Harris*, 451 F.Supp.3d 64 (D.D.C. March 27, 2020) (exceptional reasons existed for child pornography defendant because of dangers presented by incarceration); *United States v. Mutte*, 383 Fed.Appx. 718 (10th Cir.2010) (exceptional reasons existed for defendant convicted of assault resulting in serious bodily injury); *United States v. Winsor*, 890 F.Supp.2d 1257 (D.Or. September 11, 2012) (exceptional reasons existed for child pornography defendant because he was person who "may be a target in prison").

## CONCLUSION

For the foregoing reasons, Mr. Hankison respectfully requests the Court reverse the district court's order denying his motion for release pending appeal.

Respectfully submitted,

/s/ Jarrod J. Beck

LAW OFFICE OF JARROD J. BECK, PLLC
101 WEST SHORT STREET
LEXINGTON, KENTUCKY 40507

/s/ Ibrahim Farag

FARAG LEGAL SERVICES, PLLC
4010 DUPONT CIR., SUITE 309
LOUISVILLE, KENTUCKY 40207

COUNSEL FOR DEFENDANT-APPELLANT

## CERTIFICATE OF COMPLIANCE

This corrected brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(f) and Sixth Circuit Local Rule 9(a)(4). According to a computer count, the principal brief contains 5,133 words, including footnotes. Counsel also has filed an Appendix containing the judgment of conviction pursuant to Federal Rule of Appellate Procedure 9(b) and the district court's order denying Mr. Hankison's motion for bond pending appeal pursuant to Federal Rules of Appellate Procedure 9(b) and 9(a)(1).

/s/ Jarrod J. Beck

COUNSEL FOR DEFENDANT-APPELLANT

23

## CERTIFICATE OF SERVICE

On November 7, 2025, I electronically filed this corrected brief through the

ECF system, which will send notice of docket activity to all other counsel of

record.


/s/ Jarrod J. Beck

COUNSEL FOR DEFENDANT-APPELLANT

## APPELLANT'S DESIGNATION OF DISTRICT COURT DOCUMENTS

| Record Entry | Page ID # | Description of Document |
|---|---|---|
| R. 1 | 1-4 | Indictment |
| R. 134 | 5427-28 | Order |
| R. 169-1 | 5842-47 | Trial Stipulations |
| R. 217 | 12586-12646 | Trial Transcript, Volume 8-A |
| R. 218 | 12102-12204 | Trial Transcript, Volume 8-B |
| R. 232 | 10922-10924 | Partial Jury Verdict (Ct. 2) |
| R. 233 | 10925-10926 | Partial Jury Verdict (Ct. 1) |
| R. 240 | 11484-11678 | Trial Transcript, Volume 10 |
| R. 241 | 12805-12931 | Trial Transcript, Volume 11 |
| R. 242 | 11806-11808 | Trial Transcript, Volume 12 |
| R. 251 | 13571-13576 | Memorandum and Order |
| R. 285 | 14244-14262 | Government Sentencing Memorandum |
| R. 290 | 14349-14506 | Transcript, Sentencing |
| R. 292 | 14527-14534 | Judgment |
| R. 296 | 14544-14559 | Motion for Release Pending Appeal |
| R. 297 | 14561-14564 | Government Response |