No. 25-5954

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT
————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

BRETT KRISTOFER HANKISON,

Defendant-Appellant

————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
————————————

BRIEF FOR THE UNITED STATES AS APPELLEE
————————————

HARMEET K. DHILLON
  Assistant Attorney General
  Civil Rights Division

JESUS A. OSETE
  Principal Deputy Assistant
  Attorney General
  Civil Rights Division

ROBERT J. KEENAN
  Senior Counsel
  U.S. Department of Justice
  Civil Rights Division
  950 Pennsylvania Ave., NW
  Washington, D.C.  20530
  Telephone: (202) 305-2566

Counsel for Plaintiff-Appellee
UNITED STATES OF AMERICA

## STATEMENT REGARDING ORAL ARGUMENT

The United States agrees with defendant that this appeal should be resolved without oral argument.

# TABLE OF CONTENTS

**PAGE**

STATEMENT REGARDING ORAL ARGUMENT

STATEMENT OF JURISDICTION ..................................................................... 1

STATEMENT OF ISSUE PRESENTED .................................................... 2

STATEMENT OF THE CASE ................................................................. 2

    A.   Factual Background ..................................................... 2

    B.   Procedural Background .............................................. 5

        1.   State Trial .......................................................... 5

        2.   Federal Indictment ........................................... 5

        3.   Two Federal Trials & One Guilty Verdict ..................... 6

        4.   Government's Post-Verdict Motion for Detention ......... 7

        5.   Court Denied Defendant's Post-Trial Motions ............. 8

        6.   Sentencing Hearing ........................................... 9

        7.   Defendant's Motion for Bond Pending Appeal ........... 12

SUMMARY OF ARGUMENT ................................................................. 13

ARGUMENT ................................................................................. 13

    I.   Defendant's Request for Bail Pending Appeal Is Governed By 18 U.S.C. 3145(c) ................................................. 13

**TABLE OF CONTENTS (continued):**                    **PAGE**

II.    Standard of Review ................................................................. 16

III.   Defendant Should Be Granted Release on Bond
       Pending Appeal Pursuant to 18 U.S.C. 3145(c) .................... 17

       A.    Defendant Is Not a Flight Risk or Danger to
             the Community .............................................................. 17

       B.    Defendant's Appeal Is Not for the Purpose of
             Delay and Presents Substantial Questions of
             Law and Fact ................................................................. 18

             1.    Whether Defendant's Conduct Amounted
                   to a "Seizure" of Ms. Taylor ................................. 19

             2.    Whether Defendant's Force was
                   Unreasonable and, If So, Whether He
                   Acted Willfully ...................................................... 21

             3.    Whether the District Court Erred When
                   Considering the Parties' Provocation
                   Argument Under *Booker* ..................................... 23

             4.    Defendant's Claims of Prosecutorial
                   Misconduct ........................................................... 25

       C.    Defendant Has Clearly Shown Exceptional
             Reasons Why Detention Pending Appeal Is
             Not Appropriate ............................................................ 26

CONCLUSION ........................................................................... 27

CERTIFICATE OF COMPLIANCE

**TABLE OF CONTENTS (continued):**

CERTIFICATE OF SERVICE

ADDENDUM
     DESIGNATION OF DISTRICT COURT DOCUMENTS

# TABLE OF AUTHORITIES

**CASES:**                                                                          **PAGE**

*Koon v. United States*, 518 U.S. 81 (1996)..................................................10

*Michigan v. Chesternut*, 486 U.S. 567 (1988).........................................20

*Terry v. Ohio*, 392 U.S. 1 (1968).................................................................20

*United States v. Acosta*, 470 F.3d 132 (2d Cir. 2006)............................14

*United States v. Christman*, 596 F.3d 870 (6th Cir. 2010) ...................16

*United States v. DiSomma*, 951 F.2d 494 (2d Cir. 1991).......................26

*United States v. Martin*, 722 Fed. Appx. 435 (6th Cir. 2018)...............23

*United States v. Mitchell*, 107 F.4th 534 (6th Cir. 2024).......................23

*United States v. Pollard*, 778 F.2d 1177 (6th Cir. 1985)...................18-19

*United States v. Sittenfeld*, No. 23-3840,
    2024 WL 3025509 (6th Cir. May 15, 2024) .............................16, 19

*United States v. Stone*, 608 F.3d 939 (6th Cir. 2010)............................16

**STATUTES:**

Bail Reform Act
    18 U.S.C. 3142(f)(1)(A) ...............................................................14
    18 U.S.C. 3142(f)(1)(B) ...............................................................15
    18 U.S.C. 3143(b)(1) ....................................................................14
    18 U.S.C. 3143(b)(1)(B) .........................................................14, 18
    18 U.S.C. 3143(b)(2) ....................................................................14
    18 U.S.C. 3145(c) .....................................................................15, 17

**STATUTES (continued):**                                    **PAGE**

18 U.S.C. 242 ................................................................. 15

18 U.S.C. 3231 ................................................................. 1

28 U.S.C. 1291 ................................................................. 1

**GUIDELINES:**

Sentencing Guidelines § 5K2.10 ............................................. 10

Sentencing Guidelines § 5K2.0(a)(1)(A) ................................... 10

## STATEMENT OF JURISDICTION

Defendant-appellant Brett Hankison challenges the denial of his Motion for Bail Pending Appeal. The district court had jurisdiction over the criminal case pursuant to 18 U.S.C. 3231. This Court has jurisdiction pursuant to 28 U.S.C. 1291. *See* 18 U.S.C. 3145(c).

On July 30, 2025, the district court entered Judgment against defendant. (Judgment, R.292, Page ID # 14527-14534). On August 5, 2025, defendant filed a timely Notice of Appeal. (Notice, R.294, Page ID # 14539-14540; *see* 6th Cir. Case No. 25-5716).

On August 28, 2025, defendant filed an unopposed Motion for Bail Pending Appeal. (Motion, R.296, Page ID # 14544-14559). On October 6, 2025, the district court denied the Motion. (Order, R.299, Page ID # 14622-14660). Accordingly, on or about October 9, 2025, defendant self-surrendered to the custody of the Bureau of Prisons as ordered to serve the 33-month prison sentence imposed by the district court. On October 17, 2025, defendant timely filed a Notice of Appeal of that order. (Notice, R.303, Page ID # 14668-14669).

## STATEMENT OF ISSUE PRESENTED

Whether defendant should be granted release on bond pending appeal pursuant to 18 U.S.C. 3145(c).

## STATEMENT OF THE CASE

### A.    Factual Background

In the early morning hours of March 13, 2020, shortly after midnight, seven officers with the Louisville Metro Police Department (LMPD) executed a search warrant on the apartment of Breonna Taylor. (Indictment, R.1, Page ID # 1-2).  Defendant was one of the seven officers. (*Ibid.*).

Taylor and her boyfriend, Kenneth Walker, were in Taylor's apartment at the time officers approached the front door to execute the warrant.  (Parties' Stipulations of Fact, R.169-1, Page ID # 5844).

Officers knocked multiple times on the door to Taylor's apartment. (Parties' Stipulations of Fact, R.169-1, Page ID # 5845 at 5845).  After knocking and receiving no reply, one officer used a battering ram to force the door open.  (*Ibid.*).  Immediately after the door was opened, the lead officer, Seargent (Sgt.) John Mattingly, stepped into the doorway, and Mr. Walker fired one shot from a handgun, which struck Mattingly in the left leg and caused him to collapse to the ground.  (*Ibid.*).  In response,

Sgt. Mattingly fired six shots down the apartment's central hallway, where Taylor was standing next to Walker. (*Ibid.*). Two of those shots hit Ms. Taylor. (*Ibid.*).

When Mattingly fell to the ground, Detective (Det.) Miles Cosgrove stepped into the breech and fired 16 shots from the doorway toward the end of the apartment's hallway. (Parties' Stipulations of Fact, R.169-1, Page ID # 5845). At least three of Det. Cosgrove's bullets struck Ms. Taylor, and one of those bullets caused her death. (*Ibid.*).

At some point while this exchange of gunfire was occurring,[1] defendant moved from the area near the front door to the south side of Taylor's apartment. (Parties' Stipulations of Fact, R.169-1, Page ID # 5846). From that position, he fired five shots blindly through the sliding glass door into the apartment's living room and kitchen because, as he testified, he believed the shooter approached the front door to close on the other officers. (*Ibid.*; Trial Transcript, Vol. 9-B, R.222, Page ID # 12334-12335). Three of those five bullets went through the back wall of the

---

[1] The timing remains subject to conflicting testimony, but the disputed range amounts to a matter of several seconds. Defendant testified that he opened fire while the others were still shooting. (Trial Transcript, Vol. 9-B, R.222, Page ID # 12334-12335).

kitchen and into an adjacent apartment, where three of Taylor's neighbors were present. (Parties' Stipulations of Fact, R.169-1, Page ID # 5843, 5846 ).

Defendant then fired another five shots blindly through one bedroom window toward where he understood (correctly) the shooter was when he first opened fire. (Parties' Stipulations of Fact, R.169-1, Page ID # 5846). Some of those bullets came close to Taylor and Walker, but none of the bullets hit either of them. (Parties' Stipulations of Fact, R.169-1, Page ID # 5846).

In fact, defendant's ten shots did not hit anyone. (Parties' Stipulations of Fact, R.169-1, Page ID # 5846). Defendant did not wound Ms. Taylor or anyone else at the apartment that day. (*Ibid.*). The defendant opened fire in defense of his fellow officers after one of them had been shot by Mr. Walker, but his actions were contrary to department policy prohibiting officers from shooting blindly into an occupied dwelling without first identifying the criminal threat. (Gov't Sentencing Memorandum, R.285, Page ID # 14244-14245).

### B.    Procedural Background

#### 1.    State Trial

In September 2020, the Commonwealth of Kentucky obtained an Indictment charging defendant with three counts of felony wanton endangerment in violation of state law for firing the three shots that entered the apartment of Ms. Taylor's three neighbors. (Gov't Sentencing Memorandum, R.285, Page ID #14244-14245).  In March 2022, after a lengthy trial, a state court jury acquitted defendant on all counts. (*Ibid.*).

#### 2.    Federal Indictment

Five months later, in August 2022, a federal grand jury in the Western District of Kentucky returned a two-count Indictment against defendant. (Indictment, R.1, Page ID # 1-3).  Count 1 charged defendant with a violation of 18 U.S.C. 242, alleging that, while acting under color of law, he "willfully deprived" Ms. Taylor of the right under the Fourth Amendment to "be free from unreasonable seizures." (*Id.* at Page ID # 2).[2]  "Specifically," the Indictment alleged, "during a *seizure* of [Ms.]

---

[2]    The Indictment originally alleged that Mr. Walker was also a victim deprived of the same right, but the government struck him from the Indictment after the first federal trial led to a hung jury. (Motion to Strike, R.192, Page ID # 9264-9266).

Taylor and [Walker] *by officers* executing a search warrant, and after there was no longer a lawful objective justifying the use of deadly force, [defendant] fired five shots through a bedroom window that was covered with blinds and a blackout curtain." (*Ibid.* (emphasis added)). The Indictment also alleged special facts that increased the maximum potential sentence, namely, that the offense involved the use of a dangerous weapon and an attempt to kill. (*Ibid.*).

Count 2 stated the same type of charge under Section 242, but it related to the first volley of five bullets that defendant shot through the sliding glass door and allegedly deprived Ms. Taylor's neighbors of their Fourth Amendment rights. (Indictment, R.1, Page ID # 3).

### 3.    Two Federal Trials & One Guilty Verdict

Two trials were needed before a jury convicted defendant on either count for violating Section 242. (Gov't Sentencing Memorandum, R.285, Page ID # 14245). In November 2023, the first trial concluded with a declaration of a mistrial because that jury could not reach a verdict on either count. (*Ibid.*).

Eleven months later, in October 2024, the government tried again, (Gov't Sentencing Memorandum, R.285, Page ID #14245). Finally, on

November 1, 2024 — after a two-week trial and one *Allen* charge — the jury found defendant *not guilty* as to Count 2, but then was sent back with another *Allen* charge to deliberate further on Count 1. (*Ibid.*; Order, R. 251, Page ID # 13571-13573). Finally, the jury returned a verdict of guilty on Count 1, and the verdict contained special findings that the offense involved the use of a dangerous weapon and an attempt to kill. (Verdict, R.233, Page ID # 10926).

### 4.    Government's Post-Verdict Motion for Detention

After the verdict was received, the government made an oral motion to have defendant remanded into custody pending sentencing pursuant to 28 U.S.C. 3142, noting that there was a presumption in favor of detention because defendant stood convicted of an offense that was a crime of violence and was facing a sentence up to life imprisonment. (Transcript, R.243, Page ID # 11835-11836). The court denied the motion and found by clear and convincing evidence pursuant to 28 U.S.C. 3143 that "defendant is not a danger to the community and nor is [he] a risk of flight as the defendant has made all court appearances throughout this case and has ties to the community." (*Ibid.*; Order, R.251, Page ID # 13576).

- 7 -

### 5.   Court Denied Defendant's Post-Trial Motions

On November 15, 2024, defendant filed a Motion for a Judgment of Acquittal pursuant to Federal Rule of Criminal Procedure 29. (Motion, R.253, Page ID # 13581-13583). That Motion argued that the government failed to prove Ms. Taylor was still alive when defendant fired his ten shots into her apartment and also incorporated by reference all of the arguments he made in support of his Rule 29 Motions at trial. (*Id.* at Page ID # 13582 (citing Trial Transcript, Vol. 8-A, R.217, Page ID # 12586-12646)). The government opposed the Motion (Response, R.258, Page ID # 13693-13703), and the district court denied the Motion on February 19, 2025. (Order, R.272, Page ID # 14014-14026).

On November 15, 2024, defendant also filed a motion for new trial pursuant to Federal Rule of Criminal Procedure 33. (Motion, R.254, Page ID # 13587-13611). That Motion argued that a new trial was required due to alleged prosecutorial misconduct. (*Ibid.*). The government opposed that Motion as well. (Response, R.260, Page ID # 13743-13774). On July 18, 2025, just days before the sentencing hearing, the district court denied the Motion in a detailed, comprehensive Order that carefully

evaluated all of defendant's misconduct claims.  (Order, R.286, Page ID # 14263-14320).

### 6.    Sentencing Hearing

In its Sentencing Memorandum, the government objected to the Pre-Sentence Report (PSR) due to its erroneous Guideline calculations, which flowed from its reliance on a cross-reference to the guideline for attempted murder.  (Gov't Sentencing Memorandum, R.285, Page ID # 14260-14261).  Based on that cross-reference, the PSR had calculated a Total Offense Level of 33 (PSR ¶ 52, R.273, Page ID # 14039), which produced an advisory Guidelines range of 135-168 months' imprisonment.    (Gov't Sentencing Memorandum, R.285, Page ID # 14247).    Although the Verdict found that the offense involved an attempt to kill, the government argued that the circumstances of the offense (namely, that the "sudden and extreme provocation" confronted by defendant and his effort to protect fellow officers negated any finding of malice) required his conduct to be regarded as nothing more extreme than attempted voluntary manslaughter, which triggered application of the guideline for aggravated assault.  (*Id.* at Page ID # 14248-14252). Under that analysis, the Guidelines produced a Total Offense Level of 19

and a guideline range of 57-71 months, prior to any downward departures or variances. (*Id.* at Page ID # 14255).

The government then agreed with defendant's Motions for downward departures under the Guidelines and for downward *Booker* variances. (Gov't Sentencing Memorandum, R.285, Page ID # 14255-14261). As for Guideline-based departures, the government argued that a significant departure was warranted based on the following grounds: (1) Walker's "wrongful conduct contributed significantly to provoking the offense behavior"; (2) former police officers are susceptible to assaults and other abuse in prison, and defendant was especially susceptible due to the national publicity heaped upon this case; and (3) defendant was subjected to successive federal prosecution after an unsuccessful state prosecution regarding the same conduct. (*Ibid.* (relying on Sentencing Guidelines § 5K2.10, § 5K2.0(a)(1)(A), and *Koon v. United States*, 518 U.S. 81, 105-112 (1996))).

The government argued for a time-served sentence of one-day imprisonment, followed by three-years' supervised release. (Gov't Sentencing Memorandum, R.285, Page ID # 14260-14261). In reference to the sentencing factors in 18 U.S.C. 3553(a), the government declared

that "there is no need for a prison sentence to protect the public from defendant or to provide 'just' punishment or deterrence." (*Ibid.*). As to this factor, the government highlighted (1) defendant's lack of any prior convictions, (2) stable employment, and (3) his good performance while on pre-trial release for over four years, with no violations. (*Ibid.*).

The district court ultimately decided to vary downward on various grounds and sentence defendant to 33 months of imprisonment. (Sentencing Transcript, R.290, Page ID # 14478-14499).

At the end of the hearing, when the subject of custody was raised, the government confirmed it had no objection to defendant remaining on bond pending appeal and to defendant being allowed to self-surrender on a later date. (Sentencing Transcript, R.290, Page ID # 14502-14503). Although it acknowledged "the statute would require that he be detained immediately," the court allowed defendant to remain on bond for a later self-surrender date because he was not a flight risk or danger, had no prior bond violations, and was a good candidate for voluntary surrender. (*Ibid.*).

### 7.    Defendant's Motion for Bond Pending Appeal

On August 28, 2025, defendant filed an unopposed Motion for Bond Pending Appeal. (Motion, R.296, Page ID # 14544-14558). As to the "substantial" issues he intended to raise on appeal, defendant cited various sentencing issues, the court's decision to allow the government to put on a rebuttal case to cure a claimed failure of proof, the failure to give a jury instruction, and sufficiency of the evidence. (*Ibid.*). Defendant also relied heavily on the government's expressed misgivings in connection with sentencing. (*Id.* at Page ID # 14557-14558).

In light of the district court's prior decision to not remand defendant, its previously expressed position that it did not oppose bond pending appeal, and the apparent good-faith basis for defendant's Motion, the government filed a brief Notice of Non-opposition. (Notice, R. 297, Page ID # 14561-14563).

On October 6, 2025, the district court issued a 39-page Order denying defendant's Motion for Bond Pending Appeal and a related Motion to Extend his surrender date. (Order, R.299, Page ID # 14622-14660). As with defendant's Motion, the court's Order analyzed the issue

under Section 3143(b)(1), without addressing Section 3143(b)(2) or Section 3145(c)'s "exceptional reasons" provision.

## SUMMARY OF ARGUMENT

This Court should grant defendant bail pending appeal under 18 U.S.C. 3145(c) on the same terms and conditions imposed upon him throughout the proceedings before the district court. In the government's assessment, all three statutory requirements are present. First, as the district court has found, defendant is not a flight risk or a danger to the community if released. Second, defendant's appeal is not for the purpose of delay, and raises *some* "substantial" issues of law or fact that are "close questions" (*i.e.*, novel questions that "could go either way") and would, if successful, likely result in reversal, a new trial, or a substantially reduced sentence. Finally, defendant has "clearly shown" that there are "exceptional reasons" why defendant's detention pending appeal "would not be appropriate."

## ARGUMENT

## I. Defendant's Request for Bail Pending Appeal Is Governed By 18 U.S.C. 3145(c)

The Bail Reform Act generally provides that a defendant is entitled to bail pending appeal provided he is not a flight risk or a danger to the

community if released and his appeal "raises a substantial question of law or fact likely to result in" reversal, a new trial, or a new sentence that does not include a term of imprisonment or will be shorter than the expected duration of the appellate process.  18 U.S.C. 3143(b)(1)(B). However, when a defendant "has been found guilty of an offense in a case described in subparagraph (A), (B), or (C) of [18 U.S.C. 3142(f)(1)] and sentenced to a term of imprisonment," the court "shall order" that the defendant "be detained" even if the defendant has "filed an appeal."  18 U.S.C. 3143(b)(2).

Section 3143(b)(2) applies here because the offense of conviction qualifies under both subparagraphs (A) and (B) of Section 3142(f)(1).  As for subparagraph (A), because the jury found the offense involved use of a dangerous weapon and an attempt to kill (*see* Verdict, R.233, Page ID # 10926), the conviction under Section 242 qualifies as a "crime of violence . . . for which a maximum term of imprisonment of 10 years or more is prescribed."  18 U.S.C. 3142(f)(1)(A); *see also United States v. Acosta*, 470 F.3d 132, 135-136 (2d Cir. 2006) (Section 242 offense resulting in bodily injury or involving a dangerous weapon is a "crime of violence" for purposes of Section 924(c)).  As for subparagraph (B),

because the jury found that the offense involved an attempt to kill (*see* Verdict, R.233, Page ID # 10926), the Section 242 conviction is "an offense for which the maximum sentence is life imprisonment." 18 U.S.C. 3142(f)(1)(B); *see* 18 U.S.C. 242.

However, even when detention is indicated under Section 3143(b)(2), the Bail Reform Act provides for a release valve in cases where there are "exceptional reasons why [the defendant's] detention would not be appropriate." 18 U.S.C. 3145(c). Section 3145(c) provides as follows:

> A person subject to detention pursuant to [Section 3143(b)(2)], and who meets the conditions of release set forth in [Section 3143(b)(1)], *may be ordered released, under appropriate conditions*, by the judicial officer, *if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate.*

18 U.S.C. 3145(c) (emphasis added).  For the reasons set forth below, Section 3145(c) governs defendant's request for bail pending appeal.[3]

---

[3]    As noted above, defendant did not raise Section 3143(b)(2) or 3145(c) in his Motion; he relied solely on the provisions of Section 3143(b)(1). (Motion, R.296, Page ID # 14544-14558). As a result, the district court also analyzed the bail issue under Section 3143(b)(1), without regard to subsection (b)(2) or Section 3145(c).  Defendant's pending appeal also raises a mix of contemplated appellate claims that

## II.   Standard of Review

Upon review of an order denying bail either pre-trial or pending appeal, this Court "review[s] the district court's factual findings for clear error, but [it] consider[s] mixed questions of law and fact—including the ultimate question whether detention is warranted—de novo." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010); *United States v. Christman*, 596 F.3d 870, 870 (6th Cir. 2010)).

In particular, the district court's "evaluation of the legal merits" of a motion for bond pending appeal is reviewed "de novo." *United States v. Sittenfeld*, No. 23-3840, 2024 WL 3025509, at *1 (6th Cir. May 15, 2024) (reversing district court order denying bond pending appeal because defendant raised a "substantial" issue that was a "close" call and would, if successful, result in reversal or a new trial citation omitted).

---

differ from those cited in his Motion before the district court. Nonetheless, Section 3145(c) incorporates all of the factors considered under Section 3143(b)(1), and the relevant facts and issues are presented sufficiently on appeal to allow this Court to consider defendant's "exceptional reasons" argument under Section 3145(c).

## III.  Defendant Should Be Granted Release on Bond Pending Appeal Pursuant to 18 U.S.C. 3145(c)

Under Section 3145(c), a defendant who is subject to Section 3143(b)(2)'s mandatory-detention provision may be granted bail pending appeal provided the following three things are true: (1) he is not a flight risk or a danger to the community if released, as required by Section 3143(b)(1)(A); (2) his appeal is not for the purpose of delay, but "raises a substantial question of law or fact likely to result in" reversal, a new trial, or a new sentence that does not include a term of imprisonment or that will be shorter than the expected duration of the appellate process, as also required by Section 3143(b)(1)(B); and (3) "it is clearly shown that there are exceptional reasons why [the defendant's] detention [pending appeal] would not be appropriate." *See* 18 U.S.C. 3145(c).

### A.  Defendant Is Not a Flight Risk or Danger to the Community

The government has stipulated that defendant poses no risk of flight and no danger to the community if he were to be released pending appeal, the first two threshold criteria. (Notice of Non-Opposition, R.297, Page ID # 14561-14562; and Sentencing Transcript, R.290, Page ID # 14503-14505).  Moreover, the district court previously found on

multiple occasions that defendant presented no flight risk or danger to the community and had no prior violations of bond. (*See* Order, R.251, Page ID # 13576; and Sentencing Transcript, R.290, Page ID # 14502-14503).

## B. Defendant's Appeal Is Not for the Purpose of Delay and Presents Substantial Questions of Law and Fact

In the government's view, it is equally clear that defendant's "appeal is not for the purpose of delay." 18 U.S.C. 3143(b)(1)(B). Nothing about his contemplated claims of error appear frivolous or otherwise raised for the purpose of delay.

The next question is whether defendant "raises a substantial question of law or fact likely to result in" reversal, a new trial, or a substantial sentence reduction, as required by Section 3143(b)(1)(B). Importantly, the statute "does not require" a finding "that [the district court] committed reversible error." *United States v. Pollard*, 778 F.2d 1177, 1181-1182 (6th Cir. 1985). Rather, "an appeal raises a substantial question when [it] presents a close question or one that could go either way and that the question is so integral to the merits of the conviction that it is more probable than not that reversal or a new trial will occur if the question is decided in the defendant's favor." *Id.* at 1182 (citation

and internal quotations marks omitted). Section 3143(b) "does not require a court to think reversal is probable or likely." *Sittenfeld*, 2024 WL 3025509, at *1 (citing *Pollard*, 778 F.2d at 1181-1182). Instead, "it must be likely that success on appeal, on the substantial question that the defendant raises, would result in reversal or a new trial." *Ibid*.

Under *Pollard*, the record provides ample grounds for finding that *some* of defendant's contemplated claims warrant bail pending appeal, and the district court erred in denying his motion.

### 1.   Whether Defendant's Conduct Amounted to a "Seizure" of Ms. Taylor

In its sentencing brief, the government candidly raised an issue about whether defendant's alleged conduct could reasonably be found to constitute a "seizure" under the Fourth Amendment. (Gov't Sentencing Memorandum, R.285, Page ID # 14259-14260). The government noted that it is "aware of no other prosecution pursuant to [Section] 242 in similar circumstances," where a defendant is charged for shooting at a perpetrator who is firing on the defendant or fellow officers and when the defendant does not, in fact, hit anyone with his return fire. (*Ibid.*). The government further observed that "reasonable minds might disagree as

to whether defendant['s] . . . conduct constituted a seizure under the Fourth Amendment in the first place," and "whether, even if defendant['s] . . . conduct did constitute a seizure, a prosecution under this statute should have been brought under these circumstances at all." (*Ibid.*).

Defendant essentially raised this issue during and after trial in his motions for acquittal when he argued that the government failed to introduce any evidence that Ms. Taylor was alive at the time defendant fired into her apartment.  On this record, there is a sufficient factual basis for defendant to make a non-frivolous argument that (1) he did not physically "seize" Ms. Taylor since he did not kill or even wound her, and (2) to the extent he participated in the "seizure" by a "show of authority" under *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968), when he fired into her apartment, the evidence was insufficient to prove that she was sufficiently conscious to be aware of his shooting and whether "[s]he was not free to leave."  *See Michigan v. Chesternut*, 486 U.S. 567, 573 (1988) (citation omitted).

## 2. Whether Defendant's Force was Unreasonable and, If So, Whether He Acted Willfully

In its Sentencing Memorandum, the government noted that defendant "knew that he and his fellow officers had just been fired upon, and one of them had been hit," and, although he did shoot blindly into the apartment, he "did not kill or wound Breonna Taylor . . . or anyone else." (Gov't Sentencing Memorandum, R.285, Page ID # 14259). During trial, the government acknowledged that the officers were presented with a mortal threat to themselves. (Trial Transcript, Vol. 11, R.241, Page ID # 12837-12841; Sentencing Transcript, R.290, Page ID #14463-14464 (citing parts of trial transcript)). Yet, the government took the position that Mattingly and Cosgrove were justified in returning fire (even though they hit the unarmed Ms. Taylor), but defendant acted unreasonably to willfully deprive Ms. Taylor of her rights. (*Ibid.*).

At sentencing, the government explained that these concerns informed the government's recommendation of a time-served sentence of one day in prison. (Sentencing Transcript, R.290, Page ID # 14463). For example, even though some evidence suggested that Mattingly and Cosgrove were arguably still at risk when defendant opened fire, the

indictment suggested that the risk to the officers and thus the justification for the use of deadly force evaporated in a "millisecond between [Sgt.] Mattingly and Cosgrove emptying their clips and [defendant] starting to shoot." (*Id.* at Page ID # 14465). As we acknowledged, these distinctions were "being made very thinly," which is why "th[e] jurors struggled with" the charges, and why a prison sentence was unwarranted. (*Id.* at Page ID # 14464).

On the related subject of "willfulness," we argued that the evidence —"in fairness" and with a "measure of grace" — requires some acknowledgement at least for purposes of sentencing that defendant may not have had his department policy and training in the forefront of his mind because he was concerned about his fellow officers being fired upon. (Sentencing Transcript, R.290, Page ID # 14466).

As the Court knows, challenges to the sufficiency of evidence are reviewed under a rigorous standard on appeal, but the facts of this case again render defendant's claims non-frivolous and "substantial" for the limited purpose of Section 3143(b)(1)(B).

**3.** **Whether the District Court Erred When Considering the Parties' Provocation Argument Under *Booker***

Defendant states that one of his contemplated claims of error relates to whether the district court erred by failing to consider one sentencing factor as part of its *Booker* analysis under Section 3553(a). (Br. 17-19). The argument at issue related to the sudden and extreme provocation that the parties cited in support of a time-served prison sentence. (*Ibid.*). Defendant argues that the district court erred by declining to give it any weight under Section 3553(a) on the ground that it considered the issue when calculating the Total Offense Level under Guidelines. (*Ibid.* (citing *e.g.*, *United States v. Mitchell*, 107 F.4th 534, 540 (6th Cir. 2024)), and *United States v. Martin*, 722 F. App'x 435, 437 (6th Cir. 2018)).

In this case, the district court clearly considered the parties' argument when it decided to use the aggravated-assault guideline when determining the Base Offense Level. However, as part of its analysis regarding the arguments for a downward departure or variance, the court chafed against what it perceived as a request for double-counting of the fact that defendant's conduct was triggered by Walker firing upon the

- 23 -

other officers.  As to a downward departure, the court made the following

comments:

> [T]hese departures are generally applied in circumstances where aggravated or mitigating circumstances are not adequately taken into account, but here we just talked for quite a while about the provocation.  We have taken it into account in choosing to apply the aggravated assault guideline as opposed to the attempted murder guideline.  We are taking it into account by choosing attempted manslaughter based on the emotional distress caused by the shooting itself; the provocation.  I think we have taken it into account adequately, so the guidelines reflect that.

(Sentencing Transcript, R.290, Page ID # 14395-14396).

Later in the hearing, when explaining its sentencing decision under

Section 3553(a), the court made similar remarks:

> The bottom line is I understand the provocation - - and we have taken that provocation into account in the guidelines, but the provocation does not then allow officers or anyone else to simply then do anything else they want and it be somehow excused.

(Sentencing Transcript, R.290, Page ID # 14484-14486).

Moreover, in response to the court's apparent resistance to the

parties' equitable argument, the government noted that the heightened

starting point under the Guidelines was dictated by the jury's finding

that the offense involved an attempt to kill, and the government noted

that there was conflicting testimony on that point.    (Sentencing Transcript, R.290, Page ID # 14468-14470).   Based on a point made by defendant earlier in the hearing, the government noted that defendant testified he was trying to hit and neutralize the shooter, not to kill for the sake of killing, and that is consistent with how police are generally trained. (*Ibid.*).  The government further noted that its closing argument was largely based on characterization of that testimony.  If that special finding is found invalid on appeal, the Guidelines analysis would start with the aggravated assault guideline, and the provocation argument (which is basically an imperfect defense-of-others defense) could be used *in the first instance* to work down from that lower starting point.  (*Ibid.*).

### 4.    Defendant's Claims of Prosecutorial Misconduct

The government filed a lengthy Opposition that fully addressed defendant's claims of misconduct, and the district court properly rejected those claims when it denied defendant's Motion for new trial.  (Response, R.260, Page ID # 13743-13774; Order, R.286, Page ID # 14263-14320). Accordingly, the government does not consider these claims to be "substantial" appellate issues under Section 3143(b)(1).

## C.    Defendant Has Clearly Shown Exceptional Reasons Why Detention Pending Appeal Is Not Appropriate

"Exceptional reasons" permitting the release of a defendant subject to mandatory detention are those that "present a unique combination of circumstances giving rise to situations that are out of the ordinary." *United States v. DiSomma*, 951 F.2d 494, 497 (2d Cir. 1991).  There is no requirement that the questions raised in a defendant's appeal be "of absolute legal novelty" to constitute "exceptional reasons."  *Id.* at 497.  "An unusual legal or factual question can be sufficient . . . to meet this test."  *Ibid.*  "On the other hand, a merely substantial question may be sufficient, in the presence of one or more remarkable and uncommon factors[.]"  *Ibid.*

For all the foregoing reasons, the government submits that defendant's claims and the record in this case "present a unique combination of circumstances" that constitute "exceptional reasons" which render the detention of defendant pending appeal inappropriate. The claims are novel issues of law applied to an unusual set of facts, and the procedural history — namely, the three trials needed to get a single guilty verdict, and then only after two *Allen* charges — counsel in favor

of granting bail. That is especially true in light of the mitigating sentencing factors and defendant's vulnerability to assault in a custodial environment.

## CONCLUSION

For the foregoing reasons, this Court should grant defendant bail pending appeal on the same terms and conditions imposed upon him during proceedings before the district court.

In taking this position, the government stresses again that it is not hereby conceding that any of defendant's contemplated claims of error on appeal will ultimately prove meritorious. The government reserves the right to oppose any and all claims of error based on any available grounds after full consideration of the record and all available case authorities. *Cf. Sittenfeld*, 2024 WL 3025509, at *1 (granting bail pending appeal but

noting that its decision on bail "express[ed] no opinion on the ultimate outcome of Sittenfeld's appeal").

Respectfully submitted,

HARMEET K. DHILLON
  Assistant Attorney General
  Civil Rights Division

JESUS A. OSETE
  Principal Deputy Assistant
  Attorney General
  Civil Rights Division

  */s/ Robert J. Keenan*
  _____

ROBERT J. KEENAN
  Senior Counsel
  U.S. Department of Justice
  Civil Rights Division
  950 Pennsylvania Ave., NW
  Washington, D.C.  20530
  Telephone: (202) 305-2566
  E-Mail: robert.keenan@usdoj.gov

Counsel for Plaintiff-Appellee
UNITED STATES OF AMERICA

Date:  November 13, 2025

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Sixth Circuit Rule 32(a)(7)(B)(i) because it contains 5140 words (*i.e.*, does not exceed 5200 words), excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Sixth Circuit Rule 32(b)(1).

This brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it was prepared in Century Schoolbook 14-point font using Microsoft Word for Microsoft 365.

*/s/ Robert J. Keenan*
_____
ROBERT J. KEENAN

Date:  November 13, 2025

## CERTIFICATE OF SERVICE

On November 13, 2025, upon effective completion of the e-filing, I filed this brief with the Clerk of Court through the CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

*/s/ Robert J. Keenan*

ROBERT J. KEENAN

## **ADDENDUM**
## **DESIGNATION OF DISTRICT COURT DOCUMENTS**

| **Document Description** | **Record Entry** | **Page ID # Range** |
|---|---|---|
| Indictment | R. 1 | 1-3 |
| Parties' Stipulated Facts re Trial | R. 169-1 | 5842-5847 |
| Trial Transcript, Vol. 8-A | R. 217 | 12586-12646 |
| Trial Transcript, Vol. 9-B | R. 222 | 12334-12335 |
| Verdict on Count 1 | R. 233 | 10925-10926 |
| Transcript of Post-Trial Detention Hrg. | R. 243 | 11835-11836 |
| Order Re. Verdict & Detention | R. 251 | 13571-13576 |
| Defendant's Motion for Acquittal | R. 253 | 13581-13583 |
| Gov't Opposition to Motion | R. 258 | 13693-13702 |
| Order Denying Motion for Acquittal | R. 272 | 14014-14026 |
| Defendant's Motion for New Trial | R. 254 | 13587-13611 |
| Gov't Opposition to Motion | R. 260 | 13743-13773 |
| Order Denying New-Trial Motion | R. 286 | 14263-14320 |
| Gov't Sentencing Brief | R. 285 | 14244-14262 |
| Transcript of Sentencing Hearing | R. 290 | 14349-14506 |
| Defendant's Motion for Bail on Appeal | R. 296 | 14544-14559 |
| Gov't Notice of Non-Opposition | R. 297 | 14561-14563 |
| Order Denying Motion for Bail | R. 299 | 14622-14660 |