No. 25-5954

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Dec 19, 2025
KELLY L. STEPHENS, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff-Appellee, | ) |
| v. | )    O R D E R |
| BRETT HANKISON, | ) |
| Defendant-Appellant. | ) |

Before: GIBBONS, THAPAR, and READLER, Circuit Judges.

PER CURIAM. Detective Brett Hankison requests bail pending appeal. The government agrees with his request. Because this case presents "substantial questions" and Hankison is neither a flight risk nor danger to the community, we grant his motion.

I.

A.

On March 12, 2020, the Louisville Metro Police Department (LMPD) obtained a warrant to search Breonna Taylor's apartment as part of a narcotics investigation. Just after midnight, seven LMPD officers arrived at her apartment to execute the warrant. One of those officers was Detective Brett Hankison, who had worked for the LMPD for 17 years.

The facts of the next few minutes are complicated, contested, and tragic. But the parties have helpfully stipulated to the basics. They agree that "[o]fficers knocked multiple times on [Taylor's] door." R. 169-1, Pg. ID 5845. Receiving no response, they "used [a] ram to hit the

right side of the door, near the door handle." *Id.* The door swung open to reveal two figures—Taylor and her boyfriend—standing at the end of a 30-foot hallway.

As soon as "the exterior door swung open, [Taylor's boyfriend] immediately fired one shot with a handgun" at the officers. *Id.* The bullet hit an LMPD sergeant. As he went down, the injured officer fired six shots at his assailants. Two of his bullets hit Taylor. Stepping in front of the injured officer, another LMPD detective fired more rounds into the apartment. Three of those bullets struck Taylor, one of them fatally.

Hankison was not in Taylor's apartment for any of this. As the officers breached the front door, Hankison stationed himself in front of the sliding glass doors on the side of Taylor's apartment. After he took up his position, he heard gunshots and saw muzzle flashes through the glass doors. From his vantage point, he believed that an armed assailant was advancing down the hallway towards his fellow officers.

While the officers were still returning fire, Hankison shot "10 rounds into Ms. Taylor's apartment." *Id.* at 5846; *see also* R. 222, Pg. ID 12334–35. His "bullets did not strike anyone." R. 169-1, Pg. ID 5846. The rounds went through the wall of Taylor's hallway, close to where her boyfriend had first fired at the officers. Three of the bullets embedded in the wall of her neighbors' apartment.

B.

After this incident, Hankison was tried for the incident in state court. R. 285, Pg. ID 14244–45. A jury acquitted him on all counts.

After the state court verdict, the federal government charged Hankison under 18 U.S.C. § 242 for seizing Taylor and her neighbors in violation of the Fourth Amendment. The jury

deliberated for about three days without reaching a verdict, and the district court declared a mistrial.

The federal government retried Hankison in October 2024. After another lengthy trial and two *Allen* charges, the jury acquitted Hankison of charges relating to Taylor's neighbors but convicted Hankison of violating Taylor's Fourth Amendment rights.

Hankison challenged that verdict. He first argued that the government failed to show Taylor was alive when Hankison fired into her apartment. He additionally requested a new trial due to prosecutorial misconduct. The government opposed the motions, and the district court denied them both.

The case then proceeded to sentencing. The government requested a sentence of time served and three years of supervised release. As the government explained, imprisonment would not meaningfully protect the public, deter similar conduct, or serve the public's interest in justice. Ultimately, the district court sentenced Hankison to 33 months' imprisonment followed by three years of supervised release.

Hankison appealed. He reprised his arguments that the prosecution engaged in misconduct and introduced insufficient evidence to justify his conviction. He also appealed his sentence, challenging both its procedural and substantive reasonableness.

Hankison also filed an unopposed motion for bail pending appeal. The district court, however, denied the motion. Hankison surrendered himself to the Bureau of Prisons to begin his sentence on October 9, 2025. He then timely appealed the district court's motion ruling.

II.

We review the district court's ultimate determination that detention was warranted de novo. *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010).

A.

Under the Bail Reform Act, Hankison can be released pending appeal if he shows (1) by clear and convincing evidence that he is not likely to flee or pose a danger to others if released; (2) that the appeal is not for purposes of delay; and (3) that the appeal raises a substantial question of law or fact likely to result in reversal, a new trial, release, or a noncustodial sentence. 18 U.S.C. §§ 3143(b), 3145(c); *United States v. Chilingirian*, 280 F.3d 704, 709 (6th Cir. 2002). Though Hankison must produce evidence for each prong, the government bears the ultimate burden of persuading the court that no set of conditions of release can assure the community's safety. *Stone*, 608 F.3d at 946.

The first two factors easily favor Hankison. The government, defendant, and district court agree that Hankison is not a flight risk or a danger to others. And both sides agree that Hankison's appeal is not an attempt at delay.

Thus, this case comes down to the third factor—whether Hankison's appeal presents a substantial question. An appeal raises a substantial question when it (1) "presents a close question or one that could go either way" and (2) raises an issue that is "so integral to the merits of the conviction that it is more probable than not that reversal or a new trial will occur if the question is decided in the defendant's favor." *United States v. Pollard*, 778 F.2d 1177, 1181-82 (6th Cir. 1985) (citation modified).

Hankison has presented a substantial question. First, Hankison's appeal presents a meaningful challenge to the sufficiency of the evidence substantiating his conviction. As he has consistently argued, there are questions about whether the government proved Taylor was "alive or otherwise capable of being seized" when he fired. Appellant Br. at 8. Hankison additionally asserts that the government failed to show his use of deadly force was unreasonable or that he

willfully deprived Taylor of her rights. These arguments raise serious and substantial issues that merit close consideration. The issues are also unique. The government admits this was a novel prosecution; it is not aware of any other prosecution of its type. Appellee Br. at 19. Ultimately, if Hankison succeeds on any of the issues he raises, we would be required to vacate his conviction or give him a new trial. *United States v. King*, 126 F.4th 440, 442 (6th Cir. 2025).

B.

Hankison faces a final hurdle for bail based on the nature of his indictment. By statute, judicial officers "shall order" any person convicted of an offense carrying a possible life sentence to "be detained." 18 U.S.C. § 3143(c); *see also* 18 U.S.C. §§ 3143(b)(2), 3142(f)(1)(B). Hankison's conviction under 18 U.S.C. § 242 falls into this category. To rebut this strong presumption favoring detention, Hankison must identify "exceptional reasons why [his] detention would not be appropriate." 18 U.S.C. § 3145(c). Such reasons include any "unique combination of circumstances giving rise to situations that are out of the ordinary." *United States v. Sandles*, 67 F. App'x 353, 354 (6th Cir. 2003) (quoting *United States v. DiSomma,* 951 F.2d 494, 497 (2d Cir. 1991)). We have broad discretion over determining whether an "extraordinary reason" exists. *United States v. Garcia*, 340 F.3d 1013, 1018 (9th Cir. 2003).

The government agrees this case is extraordinary. First, it is highly unusual that the government did not oppose Hankison's motion for bail and recommended no custodial sentence. Yet Hankison has already served more than two months in custody—far longer than either party sought. Second, as the government admits, again, this case presents novel issues. Third, the government agrees that Hankison has many unusual mitigating factors in his favor. For instance, he is a veteran law enforcement officer whose trial and sentencing were highly publicized. As a result, "in BOP custody, his notoriety has led to threats that have required him to be moved to

special housing." Appellant Br. at 22. Hankison's compelling concerns about his safety during the pendency of his appeal further support our decision to grant bail pending appeal. In short, he has shown exceptional reasons for release.

* * *

Accordingly, we GRANT Hankison's motion for release pending appeal. Hankison shall be released on his own recognizance forthwith under the conditions of release that the district court previously imposed. *See* R. 16.

ENTERED BY ORDER OF THE COURT

Kelly L. Stephens, Clerk